IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:19-CV-91-D

| | | |
|---|---|---|
| ALICE TATE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| CAMP LEJEUNE, | ) | |
| | ) | |
| Defendant. | ) | |

On November 6, 2019, defendant moved to dismiss plaintiff Alice Tate's ("Tate" or "plaintiff") complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted [D.E. 11] and filed a memorandum in support [D.E. 11-1]. See Fed. R. Civ. P. 12(b)(1), (6). On November 6, 2019, the court notified Tate about the motion, the response deadline, and the consequences of failing to respond [D.E. 12]. See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam). Tate did not respond. As explained below, the court grants defendant's motion to dismiss.

I.

Tate alleges that her family ingested water from public utilities at Camp Lejeune in Jacksonville, North Carolina, which caused her late husband's death, her daughter's sickness, and her sickness. See Compl. [D.E. 1-1] 2. In 2001, Tate submitted three administrative claims forms requesting compensation for those injuries on behalf of herself, her daughter Lanira Murphy, and her late husband Lamont Murphy. See Def. Ex. 2–4 [D.E. 11-2, 11-3, 11-4]. Tate reports that she ingested water at Camp Lejeune from 1984 to 1987 while Lamont Murphy served on Camp Lejeune.

See Def. Ex. 2 [D.E. 11-2] 4, 7. Tate claims that the water caused her to suffer from cancer. See id. at 4–5; cf. Compl. 4. Lanira Murphy reports ingesting the water at Camp Lejeune while in Tate's womb during the same time period. See Def. Ex. 3 [D.E. 11-3] 6. As a result, Lanira Murphy reports numerous illnesses, that she "was very sick as a child," and that she still suffers from "chest pains." See id. at 1, 9; cf. Compl. 3. Lanira Murphy's form also states that Lamont Murphy died as a result of ingesting the water supply on Camp Lejeune. See Def. Ex. 3 [D.E. 11-3] 3. Tate seeks relief for the death of her husband, for her daughter's sickness, and for her own sickness. See Compl. 2–6.

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure tests subject-matter jurisdiction, which is the court's "statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted); see Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448, 453 (4th Cir. 2012); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479–80 (4th Cir. 2005). A federal court "must determine that it has subject-matter jurisdiction over the case before it can pass on the merits of that case." Constantine, 411 F.3d at 479–80. As the party invoking federal jurisdiction, Tate bears the burden of establishing that this court has subject-matter jurisdiction in this action. See, e.g., Steel Co., 523 U.S. at 104; Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999); Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). In considering a motion to dismiss for lack of subject-matter jurisdiction, the court may consider evidence outside the pleadings without converting the motion into one for summary judgment. See, e.g., Evans, 166 F.3d at 647. A court should grant a motion to dismiss under Rule 12(b)(1) "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id. (quotation omitted).

As for whether subject-matter jurisdiction exists over Tate's claims, Congress has not waived sovereign immunity for lawsuits under the Federal Tort Claims Act ("FTCA") against the Department of the Navy in its own name. See 28 U.S.C. § 2679(a); F.D.I.C. v. Meyer, 510 U.S. 471, 475–77 (1994); Kerns v. United States, 585 F.3d 187, 193–94 (4th Cir. 2009). Moreover, Tate's claim against the United States fails to allege a violation of North Carolina law as required under 28 U.S.C. § 1346(b). See, e.g., Meyer, 510 U.S. at 477. Specifically, Tate's seeks to bring suit in her individual capacity and not as the personal representative or collector of the decedent, as required under the North Carolina Wrongful Death Act. See N.C. Gen. Stat. § 28A-18-2; see Boston v. Davis, No. 3:11cv450, 2012 WL 748675, at *1–2 (W.D.N.C. Mar. 8, 2012) (unpublished); Estate of Tallman v. City of Gastonia, 200 N.C. App. 13, 15, 682 S.E.2d 428, 430 (2009); Westinghouse v. Hair, 107 N.C.App. 106, 108, 418 S.E.2d 532, 533 (1992). Furthermore, the Feres doctrine bars Tate's wrongful death claim because Lamont Murphy's alleged exposure to contaminated water was incident to his military service. See Feres v. United States, 340 U.S. 135, 146 (1950); see also Stencel Aero Eng'g Corp. v. United States, 431 U.S. 666, 670 (1977); Stewart v. United States, 90 F.3d 102, 105–06 (4th Cir. 1996); In re Camp Lejeune N.C. Water Contamination Litig., 263 F. Supp. 3d 1318, 1341–43 (N.D. Ga. 2016) ("In re Camp Lejeune"), aff'd, 774 F. App'x 564 (11th Cir. 2019) (per curiam) (unpublished). As for Tate's claim on behalf of her adult daughter, Tate cannot bring, in her own name, a claim for alleged injuries to her daughter. See, e.g., McNamara v. Kerr-McGee Chemical Corp., 328 F. Supp. 1058, 1060–61 (E.D.N.C. 1971); Crowell v. Chapman, 306 N.C. 540, 543–44, 293 S.E.2d 767, 770 (1982); cf. Stern v. Cinoman, 221 N.C.App. 231, 233, 728 S.E.2d 373, 374–75 (2012).

Alternatively, the FTCA's discretionary function exception bars Tate's claims. The exception provides governmental immunity from "[a]ny claim . . . based upon the exercise or

3

performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a); see Sanders v. United States, 937 F.3d 316, 327 (4th Cir. 2019). The application of the discretionary function exceptions involves a "two-step analysis." Wood v. United States, 845 F.3d 123, 128 (4th Cir. 2017); see Sanders, 937 F.3d at 328. First, the court must determine whether the conduct at issue concerns "'an element of judgment or choice.'" Wood, 845 F.3d at 128 (quoting Berkowitz by Berkowitz v. United States, 486 U.S. 531, 536 (1988)); see Sanders, 937 F.3d at 328. Second, if the conduct does involve judgment or choice, then the court must determine whether the decision was "based on considerations of public policy." Wood, 845 F.3d at 128 (quoting Berkowitz, 486 U.S. at 537); see Sanders, 937 F.3d at 328.

As for the first criterion, Tate fails to cite any mandatory language that prescribes a specific course of conduct that a government employee failed to follow concerning water contamination at Camp Lejeune. Thus, the conduct necessarily involves a "discretionary" judgement or choice. Moreover, Tate would not be able to make such a showing, even with the benefit of counsel and discovery. See In re Camp Lejeune, 263 F. Supp. 3d at 1341–57. Additionally, Tate also fails to allege any facts to show that the military's decisions regarding the use, disposal, and regulation of chemicals in the Camp Lejeune water supply, along with its investigation, remediation, and notification decisions concerning the water supply, were not based on considerations of public policy. Decisions involving use and disposal of chemicals, together with related decisions regarding environmental investigation and remediation, require consideration of multiple policy factors, including "national security, resource constraints, and environmental impact." Pieper v. United States, 713 F. App'x 137, 140 (4th Cir. 2017) (per curiam) (unpublished) (quotation omitted); see Oxendine v. United States, No. 3:08-4036-CMC-PJG, 2009 WL 3757517, *5 (D.S.C. Nov. 9, 2009)

4

(unpublished); cf. In re Camp Lejeune, 263 F. Supp. 3d at 1341–57. Accordingly, the court does not have subject-matter jurisdiction over the claims in Tate's complaint.

II.

In sum, the court GRANTS defendant's motion to dismiss [D.E. 11] and DISMISSES the complaint without prejudice.

SO ORDERED. This 30 day of December 2019.

JAMES C. DEVER III
United States District Judge